Case 7:21-cr-00681-NSR   Document 139   Filed 01/17/24   Page 1 of 13

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/17/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

JACOB CARTER,
QUADRI SALAHUDDIN, and
ANWAR SALAHUDDIN

               Defendants.

No. 21-CR-681-01-02-03 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Defendants Jacob Carter, Quadri Salahuddin, and Anwar Salahuddin ("Defendants") are charged by indictment on November 9, 2021 alleging each committed (1) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One); (2) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Count Two); and (3) aggravated identity theft, in violation of 18 U.SC. §§ 1028(a)(1) and 2(a) (Count Three). (Indictment, ECF No. 20). Trial is scheduled to begin January 29, 2024. (Minute Entry for Proceedings held before Judge Nelson Stephen Román, September May 24, 2023). Before the Court is the Government's motion *in limine* (the "Mot.", ECF No. 53).

    The Government has moved *in limine* to: (1) admit out-of-court communications between (a) applicants to the Small Business Administration's ("SBA") COVID-19 Economic Injury Disaster Loan ("EIDL") program, (b) uncharged co-conspirators, and (c) the Defendants made in furtherance of the alleged conspiracy; (2) preclude (a) the Defendants from introducing self-serving hearsay statements; (b) the Defendants from making arguments about purported violations of their rights, the Court's jurisdiction, or similar legal arguments before the jury; (c) the Defendants from making statements about matters no likely to be admitted into evidence and making statements about the law; (d) the Defendants from testifying in their opening, closing, and

1

cross-examinations; (e) the Defendants from cross-examining witnesses about topics beyond the scope of their direct testimony and matters affecting their credibility; (f) the Defendants from commenting on potential punishment or sentence if convicted; (g) the Defendants from offering or eliciting testimony about their family obligations or any health, financial, or other personal factors unrelated to the charged offenses; and (3) require the Defendants proceed in a question-answer format if they testify.

## BACKGROUND

The Indictment, dated November 9, 2021, alleges that, beginning in or around March 2020 and through, at least, in or about July 2020, the Defendants allegedly conspired to commit wire fraud. (Indictment ¶ 1). In short, the Defendants allegedly sought to obtain funds from the SBA's EIDL program under false and fraudulent pretenses. (*Id*. ¶ 2). During that same timeframe, the Defendants allegedly did, in fact, obtain funds from the EIDL program under false and fraudulent pretenses. (*Id*. ¶ 3). Moreover, the Indictment alleges the Defendants obtained those funds using, without lawful authority, the identities of other individuals in an attempt to increase the amount of funds the Defendants could obtain from the EIDL program. (*Id*. ¶ 4).

On May 24, 2023, the Court set the motions *in limine* briefing schedule, with moving papers to be filed on October 6, 2023. (Minute Entry for Proceedings held before Judge Nelson Stephen Román, September May 24, 2023). The Government filed its motion *in limine* on October 6, 2023. (Mot., ECF No. 120). None of the Defendants filed motions.

## LEGAL STANDARDS

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp.2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in*

*limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

### I. Out-of-Court Statements Between the Defendants, EIDL Applicants, Uncharged Co-Conspirators

The Government requests the Court admit certain statements made between the Defendants, the more than 1,000 individuals under whose names the Defendants allegedly submitted EIDL applications (the "EIDL Applicants"), and other uncharged co-conspirators. (Mot.

3

p.3). Some of the EIDL Applicants were aware of the alleged conspiracy, while others were unaware their applications would contain false information. The Government contends these statements are admissible as co-conspirator statements under Federal Rule of Evidence ("Rule") 801(d)(2)(E) and/or as statements not offered for the truth of the matter asserted, thus bringing them outside the definition of hearsay set forth in Rule 801(c)(2). (*Id.*).

To be more precise, the Government is seeking to admit communications between Defendants and EIDL Applicants made over text message, Facebook message, email, or the like, wherein Defendants would share a confirmation that the EIDL application had been submitted and subsequent requests from either the Defendants or uncharged co-conspirators to confirm whether the EIDL funds had been disbursed to the EIDL Applicants. (*Id.* p.4). If so, the Defendants would then arrange for the Applicants to pay Defendants a portion of that disbursement. (*Id.*)

### A. Rule 801(d)(2)(E)

The Government first argues that these statements are admissible under Rule 801(d)(2)(E) as the statements of co-conspirators. The rule provides that a "statement offered against an opposing part and [that] was made by the party's coconspirator in furtherance of the conspiracy[ . . .]" is not hearsay. Fed. R. Evid. 801(d)(2)(E).

When performing an analysis under rule 801(d)(2)(E), courts must find by a preponderance of the evidence that: (1) a conspiracy existed between the defendant and the declarant and (2) the statement was made during the course of and in furtherance of the conspiracy. *United States v. Torres*, 435 F. Supp.3d 526, 531 (S.D.N.Y. 2020) (quoting *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999)).

The Government has provided a brief description of the messages it seeks to admit, described above, and a representative example of those exchanges in its motion. (Mot. at p.4, Ex.

4

1). Without more, the Court is unable to grant blanket approval to potentially over 1000 exchanges (*see Id*. at p.3) at this preliminary stage.[1]

Therefore, the Government's request is GRANTED to the extent the Government can demonstrate that the communications the Government intends to admit comply with the standard delineated in Rule 802(d)(2)(E). The Court otherwise RESERVES DECISION as to each particular statement the Government seeks to admit.

### B. Rule 801(c)(2)

Separately, the Government also seeks to admit many of these statements not for the truth of the matter asserted, but rather to show: "(1) evidence that the defendants *received* the [EIDL] Applicants' identifying and bank account information from the [EIDL] Applicants and recruiters prior to submitting the EIDL applications, (2) evidence that the [EIDL] Applicants and recruiters did *not* send (and we not asked to send) the [D]efendants false information that the [D]efendants caused to be submitted to the SBA (*i.e.*, information relating to the [EIDL] Applicants' ownership of a business and its number of employees, etc.), and (3) background evidence that places the [D]efendants' instructions and statements to the [EIDL] Applicants and recruiters in context . . ." thus taking them out of the definition of "hearsay" in Rule 801(c). (*Id*. p.7) (emphasis in original); *see also* Fed. R. Evid 801(c).

Similarly, the Court cannot grant admission for these messages sight unseen. The Court again GRANTS the Government's request to the extent it can demonstrate the relevant communications serve a purpose other than for the truth of the matter asserted and otherwise

---

[1] The Court also notes that some unknown number of EIDL Applicants were unaware of the false representations contained in their EIDL applications and were, by the Government's admission, "duped" by the Defendants. (*Id*. p.3). That lack of knowledge raises the question whether such EIDL Applicants would properly be within the scope of "co-conspirators" for purposes of Rule 801(d)(2)(E), and further weighs against the Court granting the Government's request.

RESERVES DECISION as to each particular statement the Government seeks to admit. To be express, the Court expects all parties to comply with the Federal Rules of Evidence.

## II.     Defendants' "Self-Serving" Hearsay Statements

After the Government introduces certain statements made by Defendants, it also seeks to preclude the Defendants from introducing potentially beneficial portions of those statements. (Mot. p.8). The Government indicates these potentially beneficial statements are contained within the exchanges the Government will seek to admit discussed above and in certain audio and/or video recordings made by EIDL Applicants at law enforcement's request. (*Id*.). The Government asserts these statements are inadmissible hearsay and contends that the rule of completeness would not apply to these statements. (*Id*.).

Again, without any specificity as to the statements that the Government is seeking to preclude, the Court cannot grant a comprehensive denial as to these statements. The Court RESERVES DECISION as to the admissibility of certain statements made by the Defendants.

## III.    Preclusion of Defendants' Frivolous and Meritless Arguments

The Government requests that the Defendants be precluded from making certain arguments before the jury alleging they were unlawfully arrested, that the Grand Jury did not return a true bill, that the Federal Bureau of Investigation was not established by law, that the Court is without jurisdiction, that the United States is a "mere corporation" and/or "fictitious entity", and that the Defendants were the victims of prosecutorial misconduct. (*Id*. p.10). The Court has denied motions by Defendant Carter making these arguments. To wit, the Court denied a motion to dismiss the indictment for prosecutorial misconduct and a lack of subject matter jurisdiction (*see* Opinion & Order dated January 13, 2022, ECF No. 59 (the "First Opinion") (denying motion as a "frivolous and meritless")). In the First Opinion, the Court found that a true bill was presented to the

6

Magistrate Judge prior to docketing, rejected challenges to the Court's subject matter and personal jurisdiction, and rejected arguments calling into question the legitimacy of this Court and the United States, more generally. (First Opinion p. 2-3). The Court denied what it construed as motion for reconsideration of the First Opinion in an Order & Opinion dated February 18, 2022. (ECF No. 71). Finally, the Court again denied Defendant Carter's allegations with respect to the Federal Bureau of Investigation's legitimacy and this Court's jurisdiction in an Order & Opinion dated April 11, 2022. (ECF No. 90).

Any such arguments by the Defendants would be irrelevant and thus inadmissible under Rule 401. Fed. R. Evid. 401. Moreover, the Court agrees with the Government that to allow such arguments would only confuse the jury. *See* Fed. R. Evid. 403. As such, the Court GRANTS the application. The Court will intervene as necessary if these arguments are raised and reiterates its expectation that all parties must comply with the Federal Rules of Evidence.

### IV. Preclusion of Defendants' from Making Statements Regarding Matters Not Likely to be Admitted Into Evidence and Regarding the Law

The Government asks the Court to head off any potential statements by the Defendants regarding matters not likely to be admitted into evidence or testifying about matters within their personal knowledge without taking the stand. (Mot. p.10). The Government also requests that the Defendants not be permitted to address the jury in their opening statements about matters of the law. (*Id*.).

"The making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge." *United States v. Randle*, 745 Fed. App'x 422, 424 (2d Cir. 2018) (summary order) (quoting *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983)). The content of opening statements is generally limited to "expectations as to what the evidence will show and usually do not contain large amounts of argument." *United States v. Yakobowicz*, 427 F.3d 144,

7

150 (2d Cir. 2005) (citing *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring) ("An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate the parts of the evidence and testimony to the whole; it is not an occasion for argument.")).

As an initial matter, the Court will duly inform the Defendants of the appropriate scope of an opening statement before any such statement is made. To the extent that the *pro se* Defendants stray from the proper purpose of an opening statement, the Court will exercise its discretion to intervene and prevent such improper statements. Moreover, the Court will intervene to exclude any such irrelevant statements at later points if raised by the *pro se* Defendants at a later time. Accordingly, the application is GRANTED.

### V. Preclusion of Defendants' from Testifying in Their Opening, Closing, and Cross-Examinations

The Government requests that the Defendants be precluded from testifying in their opening statements, closing arguments, and cross-examinations of witnesses. (Mot. p.11). In particular, the Government requests that the Court: (1) warn Defendants to refrain from using the first person when commenting on evidence to the jury and (2) instruct the jury prior to the Defendants' opening statements and closing arguments that any statements made by attorneys, including when Defendants act as their own counsel, do not constitute evidence. (*Id*. p.12).

As detailed above, the proper scope of an opening—and, by corollary, closing—does not countenance testimony. Similarly, it is axiomatic that testimony is inappropriate during cross-examination. The Court reiterates its expectation that the parties, including the *pro se* Defendants, will abide by the Rules of Evidence and will prevent, as necessary, any party from deviating into improper statements or lines of questioning. Accordingly the application is GRANTED.

## VI. Preclusion of Defendants' from Cross-Examining Witnesses Regarding Topics Beyond the Scope of Direct Testimony and Matters Affecting Their Credibility

The Government asks the Court to formally instruct the Defendants that cross-examination be limited to the scope of the witnesses' direct testimony and to matters affecting the witnesses' credibility, per Rule 611(b). (*Id*. p.12); *see also* Fed. R. Evid. 611(b).

The Court is cognizant of the fact that the *pro se* Defendants are likely less familiar with the proper scope of questioning during cross-examination than would be trained defense attorneys. Accordingly, the Court GRANTS the application. The Court will provide such instruction as to the scope of cross-examination prior to any such questioning by the Defendants and intervene to preclude any questioning beyond that scope.

## VII. Preclusion of Comments From Defendants Regarding Potential Punishment or Sentencing if Convicted

The Government seeks to preclude the Defendants from commenting on any potential punishment or sentencing if they are convicted. (Mot. p.14).

"It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). To allow otherwise would "invite[ the jury] to ponder matters that are not within their province, distract[] them from their factfinding responsibilities, and create[] a strong possibility of confusion." *Id*.

Accordingly, the Court GRANTS the application and will instruct the Defendants not to comment on any potential punishment or sentencing to the jury and intervene if necessary to prevent any such comments.

**VIII.   Preclusion of Comments Offering or Eliciting Testimony Regarding Family Obligations or any Health, Financial, or Other Personal Factors Unrelated to the Charged Offenses**

The Government request the Court preclude Defendants from offering evidence regarding family obligations, potential health or financial circumstances, or any other similar personal factors unrelated to guilt as, the Government argues, such matters are irrelevant. (Mot. p.15). Rule 401 provides that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence to determining the action." Fed. R. Evid. 401.

Such evidence would have no bearing on whether the Defendants are guilty or not guilty of the wire fraud and identity theft charges they face. To the extent such evidence would have an effect, it is almost certain it would improperly elicit the jury's sympathies, which courts in this District routinely find to be unfairly prejudicial. *See United States v. Rains*, No. 22-CR-18-02 (NSR), 2023 WL 6211980, at *6 (S.D.N.Y. Sept. 25, 2023) (collecting cases). The Court therefore GRANTS the Government's requests and will prohibit the Defendants from offering any evidence regarding any irrelevant, potential hardships they face.

**IX.   The Format of the Defendants' Testimony**

Finally, the Government requests that should the Defendants testify, they be precluded from proceeding in the "form of a narrative or monologue because such form would not allow the Government to have the opportunity to make timely objections to certain questions." (Mot. p.16). Instead, the Government prefers that the Defendants only be allowed to proceed such that the Defendants ask themselves a question whereafter the Government would have the opportunity to

object before proceeding to answer that question. (*Id*. pp.16-17). Alternatively, the Government suggests that the Defendants' standby counsel be provided with their questions and then perform the questioning. (*Id*. p.17).

In support for their initial request, the Government relies on a Fourth Circuit case where that court held that the District Court did not abuse its discretion in requiring a *pro se* defendant to testify in a question-answer format *See United States v. Beckton*, 740 F.3d 303, 306-07 (4th Cir. 2014). Other Districts, including the District of Connecticut, have relied on *Beckton* to require parties to proceed in a question-answer, rather than narrative, format. *See Kaufman LLC v. Estate of Feinberg*, No. 3:13-cv-01259 (VAB), 2022 WL 13845083, at *7-8 (D. Conn. Oct. 24, 2022); *Duverge v. United States*, 3:10 CV 1992 (JGM), 2018 WL 619497, at *2-3 (D. Conn. Jan. 30, 2018).

Moreover, the Advisory Committee Notes to Rule 611 expressly contemplates it being with the Court's power to determine whether testimony is given in the form of a free narrative or in a question-answer format. Fed. R. Evid. 611 Advisory Comm. Notes (1972). Even so, the Defendants here have not voiced an opinion as to their preferred method of testimony. As such, the Court finds a preliminary ruling on the matter to be premature and opts not to exercise its discretion to determine the format of the Defendants' testimony at this time. The Court notes, however, that direct examination is typically performed in a question-answer format. As such, should any of the Defendants wish to exercise their right to testify at trial, they should prepare to proceed in such fashion.

## CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is GRANTED, in part, and DENIED, in part. In summary, the Court GRANTS the Government's request to admit certain

communications between the Defendants, applicants to the COVID-10 Economic Injury Disaster Loan program, and uncharged co-conspirators to the extent it can be shown those messages comply with Rules 801(d)(2)(E) and/or 801(c)(2), but otherwise RESERVES DECISION as to each particular message. The Court also RESERVES DECISION with respect to any "self-serving" hearsay statements the Defendants may make. The Court GRANTS the Government's request to preclude: (1) the Defendants from making arguments about purported violations of their rights, the Court's jurisdiction, or similar legal arguments before the jury; (2) the Defendants from making statements about matters not likely to be admitted into evidence and making statements about the law; (3) the Defendants from testifying in their opening, closing, and cross-examinations; (4) the Defendants from cross-examining witnesses about topics beyond the scope of their direct testimony and matters affecting their credibility; (5) the Defendants from commenting on potential punishment or sentence if convicted; and (6) the Defendants from offering or eliciting testimony about their family obligations or any health, financial, or other personal factors unrelated to the charged offenses, and will give the Defendants applicable instructions as to each and otherwise intervene to ensure that inadmissible evidence or testimony is ameliorated. Finally, the Court RESERVES decision as to whether the Defendants' testimony will proceed in a question-answer format if they testify.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 120. Each standby counsel is directed to provide a copy of this Opinion & Order to their respective *pro se* Defendant and file proof of service on the docket.

Dated: January 17, 2024
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge