UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

-against-

JACOB CARTER, and
QUADRI SALAHUDDIN

                Defendants.

No. 21-CR-00681-NSR-1-2

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/21/2024__

NELSON S. ROMÁN, United States District Judge:

Jacob Carter ("Defendant Carter"), Quadri Salahuddin ("Defendant Quadri") and Anwar Salahuddin ("Defendant Anwar")[1] were charged on November 9, 2021, with (1) conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One); (2) wire fraud in violation of 18 U.S.C. §§ 1343, 1342 (Count Two); and (3) aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), 2(a) (Count Three) in connection with filing fraudulent Economic Injury Disaster Loans ("EIDL") to the Small Business Administration ("SBA") between March and July of 2020. (the "Indictment," ECF No. 20.) The case proceeded to a jury trial, which commenced on January 29, 2024, and concluded on February 9, 2024, where the three defendants were convicted on all three counts.

Before the Court are motions filed by Defendant Carter and Defendant Quadri (collectively, the "Defendants") seeking, in sum and substance, (i) an acquittal on Count Three of the Indictment pursuant to Rule 29, Fed. R. Crim. P., (ii) the dismissal of Count Two and Count Three of the Indictment on the basis that they are duplicitous, and (iii) in the alternative, a new trial pursuant to Rule 33, Fed. R. Crim. P. ("Quadri Mot.," ECF 225); ("Second Carter Mot.," ECF No. 236.)[2]

---

[1] Since relatives Quadri and Anwar share the same surname, each defendant will be referred to by their first name to avoid confusion.

[2] Defendant Carter filed a motion *pro se* on February 27, 2024 seeking an acquittal on the basis of alleged prosecutorial misconduct and evidentiary issues. The Court addresses those claims separately in Section II, *infra*.

For the reasons set forth below, the Defendants' motions are denied in their entirety.

## BACKGROUND

The following facts, unless otherwise noted, are taken from the October 11, 2021 complaint (the "Complaint"), the November 9, 2021 Indictment and the parties' memoranda of law submitted in connection with the instant motion.[3]

On February 9, 2024, a jury found Defendants guilty of all three counts.

**Emergency EIDL Grants**

The Coronavirus Preparedness and Response Supplemental Appropriations Act, signed on March 6, 2020, authorized the SBA to provide EIDLs to businesses affected by COVID-19 that met certain eligibility criteria. On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which introduced a new financial relief option for eligible small businesses—emergency EIDL advances—which provided funds to applicants with a pending EIDL application at $1,000 per employee (up to $10,000) while their EIDL application was processed. These advances did not have to be repaid. Business owners seeking EIDLs would submit an online application and provide the SBA with information to determine eligibility. Applicants were required to provide information including business name, EIN/social security numbers, gross revenues, and number of employees as of January 31, 2020. The CARES Act allowed EIDL loan applicants to verify eligibility by signing a self-certification statement, which included notice of penalty of perjury for false information.

---

[3] These include the Memorandum in Support by Quadri Salahuddin ("Quadri Mem.," ECF No. 226), Memorandum in Opposition by USA as to Quadri Salahuddin ("Opp. Quadri," ECF No. 230), Reply to Response to Motion by Quadri Salahuddin ("Quadri Reply," ECF No. 234), Memorandum in Support by Jacob Carter ("Carter Mem.," ECF No. 237), Memorandum in Opposition by USA as to Jacob Carter ("Opp. Carter," ECF No. 246), Reply Memorandum Of Law in Support ("Carter Reply," ECF No. 251).

**Defendants' Fraudulent Activities**

The Complaint alleges that between March 2020 and July 2020 Defendants orchestrated and engaged in a scheme to obtain funds from the SBA program by submitting fraudulent EIDL applications. (Compl. ¶ 7.) Defendants collected personal information from over 1,000 individuals (the "Applicants"), including their name, email, telephone number, address, banking information, social security number, and date of birth—what Anwar Salahuddin called "the format." (*Id.*). They then used Applicants' personal information to submit over unique 1,000 EIDL applications that misrepresented that Applicants owned businesses with at least ten employees, what Defendant Carter called "the sauce"—the process for submitting the EIDL applications on the SBA's website. (Opp. Carter p. 7). Defendants solicited personal information from Applicants to continuously submit EIDL applications. (Compl. ¶ 9–10.)

The Complaint states that the applications were largely similar—almost all claimed that the business' name was an individual's name, was a sole proprietorship, employed between 10 to 15 employees, and that the business' income and expenses were reported in round numbers. (Compl. ¶ 9.) Further, over 75% of the applications claimed that the business operated in the agricultural sector. (*Id.*) Applicants received the EIDL advances while their EIDL applications were pending, and they were generally required to share a portion of their funds with Defendants at around $3,000 to $5,000 per grant. (*Id.* ¶ 12.) Each application was submitted under penalty of perjury. The scheme resulted in the SBA's transfer of more than $7 million to Defendants. (*Id.* ¶ 13.)

**Counts Two and Three of the Indictment**

Defendants were charged in the three-count Indictment on November 9, 2021. Counts Two and Three, in relevant part, state as follows:

COUNT TWO (Wire Fraud)

"[D]efendants willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, [Defendants] engaged in a scheme to obtain funds from the SBA through the SBA's EIDL Program, by means of false and fraudulent pretenses, representations, and documents, including through electronic communications transmitted into and out of the Southern District of New York."

COUNT THREE (Aggravated Identity Theft)

"[D]efendants, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, [Defendants] possessed and used the names and identities of applicants in connection with the submission of fraudulent EIDL applications to the SBA during and in relation to the conspiracy and wire fraud, charged in Counts One [Conspiracy to Commit Wire Fraud] and Two of this Indictment."

Based on the foregoing, Defendants seek (i) an acquittal on Count Three of the indictment pursuant to Rule 29, Fed. R. Crim. P. on the basis of insufficient evidence, (ii) the dismissal of Count Two and Count Three of the Indictment on the basis that they are duplicitous, and (iii) in the alternative, a new trial pursuant to Rule 33, Fed. R. Crim. P. ("Quadri Mem.," ECF No. 226) ("Carter Mem.," ECF No. 237.)

## POST-TRIAL PROCEEDINGS

On February, 8, 2024, at the close of trial, Defendants, then proceeding *pro se,* orally moved for a judgment of acquittal pursuant to Fed. R. Crim. P. Rule 29 on the grounds that the Government failed to provide sufficient evidence. The Court found that the evidence in the case supporting each defendant's guilt was "overwhelming" and denied the motion. Tr. 1592−1595. After trial, on February 27, 2024, Defendant Carter, proceeding *pro se*, filed a written motion for a judgement of acquittal alleging prosecutorial misconduct and evidentiary issues at trial. (the 'First Carter Mot.," ECF No. 175.)

On July 22, 2024, Defendant Quadri filed a motion seeking to dismiss Counts Two and Three as duplicitous, enter into a judgment of acquittal for Count Three due to a lack of evidence, and request a new trial in the alternative. (Quadri Mem. p. 1.)

On September 1, 2024 Defendant Carter filed a motion seeking the same relief as Defendant Quadri, which supplemented Defendant Carter's first motion from February 2024, at the request of the court. (Carter Mem. p. 1.) (*See Order*, ECF No. 196.) In their memoranda in support of their motions, Defendants state that they seek to incorporate arguments raised by each defendant. As of the writing of this Opinion, Anwar has not filed any post-trial motions.

The Court addresses Defendant Carter and Defendant Quadri's motions here simultaneously, noting distinctions when warranted. Discussions below do not address Anwar Salahuddin unless expressly stated.

## RELEVANT LAW

*Federal Rules of Criminal Procedure, Rule 29*

Rule 29 provides that after the close of the Government's evidence in a criminal trial, on the defendant's motion, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. The rule permits a defendant to move for a judgment of acquittal within fourteen days of a guilty verdict or the Court's discharge of the jury, whichever is later. Fed. R. Crim. P. 29(c)(1). On such a motion, the Court must enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Fed. R. Crim. P. 29(a), (c); *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citing *United States v. Reyes*, 302 F.3d 48, 52 (2d Cir. 2002)). This standard imposes a heavy burden on the defendant, as a conviction must be otherwise affirmed. When assessing the sufficiency of the evidence, the Court must view the evidence

in the light most favorable to the government and draw all reasonable inferences in its favor. *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991).

*Duplicity*

An indictment is impermissibly duplicitous where: "(1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and (2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980). In determining whether an indictment is duplicitous, a court should consider "whether a general verdict of guilty [might] conceal[ ] a finding of guilty as to one crime and a finding of not guilty as to another, [whether there is a] risk that the jurors may not [be] unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions." *Sturdivant*, 244 F.3d at 75 (quoting *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981; *United States v. Tuzman*, 301 F. Supp. 3d 430, 446–47 (S.D.N.Y. 2017).

*Federal Rules of Criminal Procedure, Rule 33*

Under Rule 33, "the court may vacate any judgment and order a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Courts typically grant Rule 33 motions "only in extraordinary circumstances." *United States v. Moore*, 54 F.3d 92, 99 (2d Cir. 1995); *accord United States v. Torres*, 128 F.3d 38, 48 (2d Cir. 1997). "The defendant bears the burden of proving that [he or she] is entitled to a new trial." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). While Rule 33 "confers broad discretion upon a trial court," the Court's granting of the motion must be predicated upon the need to "avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). The "ultimate test" for the Court's consideration is "whether letting a guilty verdict stand

would be a manifest injustice" such that "an innocent person may have been convicted." *Ferguson*, 246 F.3d at 134 (citation and quotation marks omitted); see also *United States v. Aponte-Vega*, 230 F.3d 522, 525 (2d Cir. 2000) (*per curiam*) (explaining that new trial "is merited only if . . . the evidence is such that it would probably lead to an acquittal" (internal quotations omitted)).

**DISCUSSION**

**I.   Rule 29 Motion for a Judgement of Acquittal Based on 1028A and *Dubin***

Defendants argue they should be acquitted of aggravated identity theft (Count Three) because there was insufficient evidence to establish that (1) the defendant lacked "lawful authority" to use the identifying information of Applicants for EIDL funds, and (2) the Government failed to prove that the identifying information was "at the crux" of the crimes in accordance with *Dubin v. United* States, 599 U.S. 110 (2023). Defendants' arguments are unavailing as a matter of law and evidence.

   A. *Unlawful Authority Under 18 U.S.C. § 1028A*

      1.   *No Requirement for Personal Information to Have Been Stolen*

First, Defendants misinterpret the "unlawful authority" element of § 1028A to mean "with a lack of consent." To violate § 1028A, the Government had to show that during and in relation to the wire fraud Defendants knowingly transferred, possessed, or used a means of identification of another person, without lawful authority. Defendants claim that the evidence at trial was insufficient to prove that Defendants lacked the "lawful authority" to use Applicants' personal information because Applicants willingly provided personal information for the purpose of acquiring an EIDL. But it "is well-settled that the key inquiry is whether the defendant used the means of identification of another 'without lawful authority,' and that the consent of the victim has no bearing on that inquiry." (*United States v. Chalavoutis*, No. 18CR0349S1JSAKT, 2019 WL 6467722, at *3 (E.D.N.Y. Dec. 2, 2019)

(quoting *United States v. Cwibeker*, No. 12-CR-0632 JS ARL, 2015 WL 459315, at *3 (E.D.N.Y. Feb. 2, 2015).

Indeed, the majority of Circuits, including our own, agree that the phrase "[w]ithout lawful authority" does not require proof that the means of identification were stolen and can include instances in which the person whose identity was used consented to such use. See *United States v. Dumitru*, 991 F.3d 427, 433 (2d Cir. 2021); (noting that the assertion that "without lawful authority" must mean "without consent" has been widely rejected). *See also United States v. Ozuna-Cabrera*, 663 F.3d 496, 498 (1st Cir. 2011) (rejecting argument that "without lawful authority" requires "that the means of identification be stolen, or otherwise taken without permission of the owner"); *United States v. Lumbard*, 706 F.3d 716, 725 (6th Cir. 2013) ("Accordingly, we conclude that the phrase 'without lawful authority' in § 1028A ... includes cases where the defendant obtained the permission of the person whose information the defendant misused."); *United States v. Reynolds*, 710 F.3d 434, 436 (D.C. Cir. 2013) ("[U]se without lawful authority easily encompasses situations in which a defendant gains access to identity information legitimately but then uses it illegitimately—in excess of the authority granted." (internal quotation marks and alterations omitted)); *United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185 (9th Cir. 2015) ("This language clearly and unambiguously encompasses situations like the present, where an individual grants the defendant permission to possess his or her means of identification, but the defendant then proceeds to use the identification unlawfully."); *United States v. Mahmood*, 820 F.3d 177, 188 (5th Cir. 2016) ("[We] hold that § 1028A does not require actual theft or misappropriation of a person's means of identification.").

Whether or not Defendants had permission from Applicants, the use of identification of another "during and in relation to any felony violation enumerated (in § 1028A)" necessarily lacks a form of authorization recognized by law," and is thus unlawful. *Cf. United States v. Spears*, 729 F.3d 753 (7th Cir. 2013) (stating that personal information would need to be stolen or misappropriated to

8

violate § 1028A otherwise the crime constitutes identity fraud and not identity theft). Defendants' arguments reflect a minority view and one that this circuit has not subscribed to. As a matter of law, the motion for acquittal on this issue fails.

> 2. *Ample Evidence Provided at Trial to Establish that Defendants Exceeded Consented-to Use of Personal Information*

Second, there was ample evidence introduced at trial supporting the allegation that Defendants exceeded any consented-to use of Applicants' personal information. When assessing the sufficiency of the evidence, the Court must view the evidence in the light most favorable to the government and draw all reasonable inferences in its favor. *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991). Here, the three Applicants-witnesses testified stated that they provided Defendants with personal information because they believed they could be eligible for pandemic-related relief funds because of their status as a student, a first responder, or an otherwise eligible party for social aid. They testified that they did not own a business or have employees. ("Carter Opp. p. 15) *See* Tr. 636 ("It was described as a stimulus for people that had worked through COVID."); Tr. 641 ("It was to my understanding that I was almost guaranteed to receive it, being that I was a firefighter and first responder.") Even applying the Defendants' view of "unlawful authority" to mean "with a lack of consent," Applicants authorized the use of their personal information for programs for which they believed they could be eligible, which did not include status as a business owner. (*Id.*) Moreover, for Rule 29 acquittal, the Court must analyze the pieces of evidence "not in isolation but in conjunction," *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994), *abrogated on other grounds*; *see Autuori*, 212 F.3d at 114, and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *Guadagna*, 183 F.3d at 130. Here, the Government provided overwhelming evidence as to unlawful use and the totality of the aggravated

identity theft violation as a whole. Therefore, Defendants' sufficiency-of-the-evidence arguments as to their aggravated identity theft conviction fail.

   B. *Identity Theft Was at the Crux of the Criminal Conduct*

Defendants also maintain that the evidence at trial was insufficient to support that the Applicants personal information was at the "crux" of the criminal conduct. Again, we are unconvinced. Defendants rely on *Dubin v. United States* for the proposition that identity theft did not play a "key role" in the criminal conduct. 599 U.S. 110, 129 (2023). (explaining that "§ 1028A(a)(1)'s enhancement is not indiscriminate, but targets situations where the means of identification itself plays a key role"). In *Dubin,* the "crux" of the criminal conduct did not involve identity theft. *Id.* at 114. Contrastingly, identity theft was an essential part of Defendants' scheme to defraud the SBA. Names and SSN were indispensable to EIDL applications. Defendants initially used their own information and were barred from using their SSN twice, thus necessitating a continuous stream of personal information to obtain EIDL funds. Without the flow of personal information, the Defendants would have not been able to commit the wire fraud.

Moreover, after reviewing the trial transcripts and the evidence presented at trial and construing the same in the light most favorable to the Government, the Court concludes that any rational trier of fact could have found the essential elements of the crimes charged against Defendant beyond a reasonable doubt. Identity theft played a key role in the Defendants' crime such that it was not impermissibly "ancillary." *Dubin*, 599 U.S. at 114. For that reason, Defendants' arguments that the identity theft was not at the "crux" of the criminal conduct also fail.

**II.   Defendant Carter's February 27, 2024 Rule 29 Motion is Also Denied**

The Court denies Defendant Carter's motion for a Judgement of Acquittal on the basis of alleged prosecutorial misconduct and insufficiency of the evidence. (First Carter Mot., ECF No. 175.) The Court finds the motion as frivolous and meritless. First, the Court finds there was no

demonstration of prosecutorial misconduct. Defendant Carter alleges that the instant matter was constructed against him by the prosecution in retaliation for exposing "the pedophile ring the FBI is conducting along with members of the prosecution and judicial officers" (*Id.* p. 1.) We find no basis for these claims. Defendant Carter also asserts that the Government had no verifiable or admissible evidence against him at trial. He argues that every document submitted by the Government was hearsay and did not come from an authenticated source. (*Id.* p. 6–7.) Defendant Carter's assertions run counter to the Federal Rules of Evidence, Federal Rules of Criminal Procedure, and the foundation of our justice system. The Court denies Defendant Carter's claims.

### III. Duplicity Claims

Defendants move to dismiss both Count Two (wire fraud) and Count Three (aggravated identity theft) on the basis that they are each duplicitous. Accordingly, defendants contend that they were denied the right to a unanimous jury verdict because the jury was required to unanimously agree on which communications (if any) were fraudulent. Defendants' claims are unavailing. First, Defendants failed to timely challenge the Indictment on duplicity grounds and cannot show good cause for failure to raise previously. Second, even if Defendants could show good cause for failing to raise the duplicity claims earlier, Counts Two and Three are not impermissibly duplicitous because the wire fraud and use of personal information were part of a single, continuing scheme as charged in the Indictment and detailed on the Complaint a month prior. Third, the Defendants were not prejudiced by the manner in which Counts and Two represented Defendants' crimes. For these reasons, the Court denies Defendants Carter and Quadri's motions to dismiss Counts Two and Three as duplicitous.

    A.    *Waiver of Alleged Duplicity Claims*

First, Defendants' failure to raise the alleged duplicitous counts constitutes a waiver. A defendant's failure to timely "object[] to duplicity is waived if not raised before trial or, at the least, before verdict." *United States v. Droms*, 566 F.2d 361, 363 (2d Cir. 1977); Here, the alleged duplicitous character of the wire fraud and aggravated identify theft counts appears on the face of the Indictment and the Complaint made available to Defendants one month prior. Defendants had ample opportunity to move to dismiss Counts Two and Three before trial on the basis of the alleged duplicity. Their failure to do so constitutes a waiver. *See* Fed.R.Crim.P. 12(b)(3); *United States v. Sturdivant,* 244 F.3d 71, 76 (2d Cir.2001); *United States v. Viserto,* 596 F.2d 531, 538 (2d Cir.1979).

Further, Defendants' *pro se* status at trial does not excuse failure to raise the alleged duplicity claims. Generally, courts make reasonable allowances for pro se litigants to minimize "inadvertent forfeiture of important rights because of their lack of legal training." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Courts may allow errors such as a *pro se* litigant's failure in a complaint to cite a statute, or to cite the correct one, in short, allowing issues that "in no way affects the merits of a claim." *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988). These allowances do not stretch so far as to include Defendants' failure to raise the alleged duplicity claims. Moreover, prior to trial and at Defendant Carter's request, the Court held *Faretta* hearings and determined that Defendant Carter knowingly, intelligently and voluntarily waived their right to counsel and expressly acknowledged the ramifications of proceeding *pro se*, including procedural bars for failure to raise claims in a timely manner. (ECF Nos. 44, 114.) Therefore, Defendants' failure to raise the alleged duplicitous counts as a waiver for the claim and their status of *pro se* Defendants does not excuse the failure.

  B.  Counts Two and Three are Not Duplicitous

Second, even if we were to reach the merits of this claim, we would conclude that the charges were not duplicitous. The Second Circuit has long held that "acts which could be charged as separate

12

counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). Count Two of the Indictment charged the Defendants with, "knowingly engag[ing] in a scheme to obtain funds from the SBA through the SBA's EIDL Program." (*See* Indictment.) Count Three charged the Defendants with, "knowingly transfer[ing], possess[ing], and us[ing], without lawful authority, a means of identification of another person . . . in connection with the submission of fraudulent EIDL applications to the SBA during in relation to … Counts One and Two." (*Id.*)

Here, Defendants orchestrated and executed the "single continuing scheme" to defraud the SBA of over $7 million through the use of the wires and Applicants' personal information. Defendants were in communications with the Applicants and submitted EIDL applications that misrepresented that Applicants were business owners with several employees. The list of required information from Applicants was referred to "the format," supporting that there was a clear formula to the enterprise's actions to collect and use information. At trial, the Government presented hundreds of text messages, IP data, pictures, testimony, voice recordings and other evidence supporting that the Defendants actions constituted an ongoing scheme to defraud the SBA, which also included the vigorous recruitment of Applicants for personal information to continue to submit fraudulent applications. As a result, characterizing the conduct as a scheme was proper and there the duplicity issue fails.

    C.    *Defendants Not Prejudiced by Alleged Duplicity*

Third, Defendants were not prejudiced by the purported duplicity. Policy considerations guiding a court's determination of whether a defendant was actually prejudiced by a duplicitous indictment include "avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice,

13

providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions. M*argiotta*, 646 F.2d at 733; s*ee also Murray*, 618 F.2d at 896. Defendants raise or join the argument that they were prejudiced, as to Count Two, because "[t]here is no assurance that the jury unanimously agreed that [Defendants] made any particular use of the wires,", and as to Count Three, because "there is no assurance that the jury unanimously agreed that [Defendants] made any particular use of another person's means of identification," (Quadri Mem. pp. 6, 8.)

Accordingly, Defendants contend that the unanimity consideration is paramount here because some members of the jury may have found them guilty on the basis of some use of the wires or use of personal information versus others. (*Id.*) This is incorrect. Defendants were charged with a single scheme to defraud the SBA and misuse personal information. The Court has not found legal support that would require assurance that the jury unanimously agreed that Defendants made any particular use of the wires, especially given the caselaw that supports charging one count in situations that represents a continuous scheme, like is the case here. Further, Defendants could have requested as such prior to trial and the jury verdict. *See Margiotta*, 646 F.2d 729 at 733 ("If the defendant prefers identification of the one or more actionable mailings the jury finds to have occurred, we see no reason the District Judge could not submit a special interrogatory upon the *defendant's* request. (citations omitted) (emphasis added). The Court does not find the M*argiotta* policy considerations to be in tension here and hold that the Defendants were not prejudiced.

### IV. The Court Denies Defendant's Rule 33 Motion for New Trial

Defendants assert that the Court should grant a new trial under Fed. R. Crim. P. 33. based on "instructional error and because the verdict was against the weight of the evidence." (Quadri Mem. p 19). As previously established, the Court does not find any instructional error with respect to the unanimous jury verdict. Even so, "the failure to give such an instruction in a case of duplicitous

pleading does not by itself cause prejudice sufficient to warrant reversal." *United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006).

Accordingly, motions for new trials based on arguments about the weight of evidence should be granted "in the most extraordinary circumstances and only in order to avert a perceived miscarriage of justice." *United States v. Hernandez*, No. 15-CR-379 (PKC), 2024 WL 2078264, at *1 (S.D.N.Y. May 9, 2024) (quoting *United States v. Gramins*, 939 F.3d 429, 444 (2d Cir. 2019) (internal citations and quotations omitted). The Court's view on the sufficiency of the evidence has not changed since the conclusion of trial. The evidence to support the Defendants' convictions remains overwhelming. Therefore, the Defendants' have not met the high burden of seeking a new trial and their motion is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motions in their entirety. More specifically, the Court denies Defendants' motions seeking an acquittal on Count Three of the Indictment pursuant to Fed. R. Crim. P. Rule 29, Defendants' motions to dismiss Counts Two and Three of the Indictment, Defendants' motions for a new trial pursuant to Fed. R. Crim. P. Rule 33, along with Defendant Carter's motion for an acquittal on the basis of alleged prosecutorial misconduct and insufficiency of the evidence. The Court respectfully directs the Clerk of the Court to terminate the motions at ECF No. 175, 225, and 236.

Dated: November 21, 2024
      White Plains, New York

SO ORDERED:

_____